IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY ALLORD,

                         Plaintiff,                    OPINION AND ORDER

        v.                                        09-cv-310-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

---

Three and a half years ago, the Court of Appeals for the Seventh Circuit reversed the denial of social security disability benefits to plaintiff Gary Allord, a decorated Vietnam combat veteran suffering from severe post traumatic stress disorder. Allord v. Barnhart, 455 F. 3d 818 (7th Cir. 2006). Plaintiff has been trying since 1996 to establish that his disorder prevented him from engaging in any substantial gainful activity in 1992, when his eligibility for disability insurance benefits expired. After the court of appeals remanded the case, a new administrative law judge heard additional evidence, including testimony from a neutral medical expert who concluded that, although plaintiff was suffering from severe post traumatic stress disorder at the time his eligibility for disability insurance expired, his resulting limitations had an affect primarily on his social functioning and would not have prevented him from engaging in substantial gainful employment. A vocational expert

testified that a person with plaintiff's limitations could perform the unskilled jobs of janitor, hand packer and packager, assembler and industrial inspector.  Relying on the testimony of both experts, the administrative law judge found that plaintiff had not shown that he was disabled before his disability insurance coverage expired in December 1992.

As thorough and careful as the administrative law judge's opinion was, I conclude that his decision cannot stand, for two reasons.  First, he failed to follow the court of appeals' ruling when he made his findings about the credibility of lay witness Melissa Chappell-White.  Second, he failed to explain convincingly why he adopted the opinion of the neutral medical expert over plaintiff's treating psychologist. In the absence of an explanation, I cannot say with any confidence that the erroneous credibility determination did not affect the outcome of the case.  Therefore, I will reverse the commissioner's decision.  Although the case has been pending far too long, I cannot say that all factual issues have been resolved and the record supports a finding of disability, as I would have to do in order to direct the commissioner to award benefits to plaintiff.

FACTS

A.  Background and Procedural History

Plaintiff is a decorated combat veteran of the Vietnam War, who served two tours as an infantry officer from 1969 to 1971.  After returning to the United States, plaintiff

2

continued to serve in the Marines, performing desk jobs until his retirement at the rank of major in July 1987. In 1979, plaintiff earned a Bachelor of Science degree in Earth Sciences and a Bachelor of Arts degree in Urban Studies from the University of Alabama. After retiring from the military, plaintiff attempted to work as the proprietor of two small businesses, moving household goods and performing minor renovations on houses. Neither venture generated much profit.

On October 1, 1996, plaintiff applied for disability insurance benefits under the Social Security Act, alleging disability since July 31, 1987, the day he retired from the military, because of post traumatic stress disorder related to his combat experience in the Vietnam War. Plaintiff's eligibility for disability insurance benefits had expired on December 31, 1992; in order to receive benefits, plaintiff had to show that he was disabled by that date. On November 4, 1997, after the local disability agency denied his application, the Social Security Administration provided him a hearing before an administrative law judge, who denied his claim. Plaintiff appealed; the parties stipulated to a remand to the agency for further consideration.

On remand, plaintiff appeared before Administrative Law Judge Guy Arthur in Madison, Wisconsin on September 30, 2003, who decided on November 3, 2003 that plaintiff had not been disabled on or before the date on which he was last insured. Plaintiff appealed the decision to this court, which entered an order on July 20, 2005, affirming the

3

commissioner's decision.   The Court of Appeals for the Seventh Circuit disagreed and remanded the case to the agency for additional proceedings.  Allord v. Barnhart, 455 F.3d 818 (7th Cir. 2006).

On remand, the case was assigned to a new administrative law judge, John Pleuss, who held another hearing and took more evidence.  On April 11, 2008, Pleuss issued a decision finding plaintiff not disabled and the Appeals Council subsequently denied plaintiff's request for review.

### B.  Evidence Developed before Administrative Law Judge Arthur

### 1.  Foster Hutchinson, Ph.D.

Psychologist Foster Hutchinson saw plaintiff on November 6, 1987, for a mental health evaluation after plaintiff's friend, Melissa Chappell-White, recommended he see a doctor.  Plaintiff displayed distress over his wife's recent request for a divorce and told Hutchinson that he was having problems adjusting from military to civilian life.  AR 246. Plaintiff said that he was running two businesses: a moving business and a home repair business and got "pleasure from the tangible achievements he [was] able to see as a project is completed," id., but was concerned about making social and business contacts on his own and found it difficult to relate to others outside of work.  Plaintiff reported that most of his

4

social contacts were other Marines with whom he had worked before retiring and that he had few civilian friends. Id.

Dr. Hutchinson described plaintiff as "pleasant, controlled and articulate" with above average intellectual functioning and capacity for insight, normal speech in both rate and content and no evidence of memory difficulties or other cognitive impairment. Plaintiff's mood was sad and he had a restricted range of flat affect. Plaintiff reported that he had experienced depression, self-doubt, diminished concentration, restless sleep and decreased appetite in the previous 10 days since learning of his wife's wish for a divorce. AR 247.

Hutchinson diagnosed an adjustment disorder with depressed mood and a compulsive personality disorder. AR 248. Although he recommended that plaintiff receive at least weekly therapy, plaintiff did not return after the initial consultation, saying that he was planning to relocate to Alabama in the hopes of repairing his marriage. On a case-closing worksheet, Hutchinson indicated that plaintiff had a "mild" impairment in his level of vocational and educational functioning, "serious" impairment in family and social relations and "moderate" impairment in personal and emotional functioning. Id.

2. Aphrodite Matsakis, Ph. D.

In late April 1993, six years after seeing Dr. Hutchinson and four months after his eligibility for disability insurance benefits expired, plaintiff visited the Veterans Center in

5

Silver Spring, Maryland, where he saw psychologist Aphrodite Matsakis, a post traumatic stress disorder specialist.  Dr. Matsakis's notes indicate that plaintiff appeared for his initial intake meeting unkempt, frightened and hypervigilant.  AR 270.  He reported nightmares, intrusive thoughts, numbing and symptoms of clinical depression.  Id.  He told Dr. Matsakis that he was employed, divorced, had served terms in Vietnam, was not on any medication, and that, although he had suicidal and homicidal thoughts, had not made any attempts to carry them out.  Id.  Her assessment was "[m]ost likely PTSD."  Plaintiff had four or five more sessions with Matsakis, in which Matsakis evaluated plaintiff for post traumatic stress disorder and depression and discussed with him his concerns about an ex-convict who was stalking and threatening him.  AR 270-76.  Plaintiff was reluctant to pursue group therapy or additional counseling and he stopped seeing Matsakis in June 1993.

Plaintiff resumed treatment with Dr. Matsakis in March 1996, saying that he had recently lost his job and was having problems with the IRS.  AR 277.  Dr. Matsakis observed that plaintiff was "in a severe state of dissociation."  Id.  Plaintiff received regular counseling from Dr. Matsakis for the next three years until she retired in early 1999.

The record contains reports submitted to the Social Security Administration from Dr. Matsakis dated November 4, 1996; January 29, 1997; September 24, 1997; and March 16, 1999.  In the January 29, 1997 report, Matsakis stated that plaintiff was "100% unemployable" as a result of his symptoms of PTSD and that in 1993 she had diagnosed

6

severe and chronic PTSD and clinical depression and that her diagnosis had not changed. AR 193. In the same report, Dr. Matsakis wrote that plaintiff "distrusted almost everyone and had an intense fear of losing control of himself."  Id.  She thought that his difficulties interacting with others, even on a casual level, would make it impossible for him to work with others or hold a steady job.  Id.

> His work record shows that he has been fired due to personality clashes and the inability to get along with others.  Also, the amount of energy he has to bring to a job situation is limited because a lot of his energy is spent monitoring and controlling his aggression and his fears.  He sleeps poorly, has many nightmares, and is suffering from symptoms of depression as well as combat trauma, which make him emotionally and physically unavailable to concentrate on getting a task done and being productive . . .
>
> He's socially isolated and has no friends and only tenuous family connections. His PTSD has permanently and severely damaged his ability to work or maintain relationships.

Id.

In her September 24, 1997 report, Dr. Matsakis stated that plaintiff had been unemployable since 1987.  AR 232.  On December 19, 1997, the Department of Veterans Affairs found plaintiff 100% disabled by post traumatic stress disorder.

On March 16, 1999, Dr. Matsakis wrote that she had spent nearly 200 hours counseling and treating plaintiff since 1993.  She said that plaintiff displayed numerous examples of "severe manifestations" of PTSD including:  anhedonia and pervasive loss of interest in all activities; continual gross sleep disturbances, including nightmares; feelings of

7

profound guilt and worthlessness; episodes of suicidal depression; fatigue; hopelessness; diminished ability to concentrate; severe dissociation in which he lost a sense of time; difficulties concentrating resulting from intrusive memories of combat and flashbacks; severe distrust of anyone in authority; and low frustration tolerance.  AR 257.  Matsakis continued:

> Based on my history of treating Mr. Allord, I am confident in my opinion that Mr. Allord suffered from these same effects of PTSD long before I began treating him in 1993.  When I first saw Mr. Allord in 1993, I saw a severely depressed individual who had almost all of the symptoms of PTSD in severe form.  Such a progressed state of PTSD could not have emerged overnight.  His physical condition mirrored his psychological state of desperation.  In my twenty some years experience in working with combat veterans, I would say that Mr. Allord's condition was a later stage condition of PTSD.

AR 258.  Matsakis stated that she had "confirmed" her retrospective opinion by interviewing plaintiff's friend, Melissa Chappell-White on December 30, 1998.  According to Matsakis, Chappell-White's observations of plaintiff starting in 1985 were consistent with post traumatic stress disorder and many were identical to symptoms that Matsakis had observed in treatment.  AR 259.  From Chappell-White's descriptions of plaintiff and her own treatment of plaintiff, Matsakis believed that "his disorders merited severity ratings and more than met the requirements in the Social Security regulations relating to Affective Disorders and Anxiety Disorders during the late 1980s and early 1990s."  AR 262.

    At the 2003 hearing before Judge Arthur, Dr. Matsakis testified that plaintiff had suffered from severe post traumatic stress disorder before she began treating him in April

1993.  She described him as "one of the most destroyed men I've ever seen in my twenty-some years."  AR 558.  When asked to explain the basis for her opinion that plaintiff was incapable of performing any employment before December 31, 1992, Matsakis replied:

> The memory problems.  The fears he has about being with people.  The anger, the distrust, the state of paranoia, the withdrawal.  If he's successful at anything, at the teeniest hint, which he doesn't even dream of that, even if he was he would be frightened because of triggers, which we don't have time to go into which would take probably a year to explain.  But basically anything that anyone does will set him off.  Being in a closed room will set him off, being in open spaces.  Noise sets him off.  Silence sets him off.  Kindness sets him off.  Hostility sets him off and sends him off into either no man's land where he can't think or you see that angry look in his eye and he's doing everything to control it.  If the scratches and bruises I've seen on him a couple times are evidence that he sometimes can't control himself . . .
>
> The only work he does is staying alive, which is amazing that he's even here.  No, he can't do anything.

AR 565-66.

3. <u>Jonathan Shay, M.D., Ph.D.</u>

At Dr. Matsakis's request, Dr. Jonathan Shay, a staff psychiatrist at the Department of Veterans Affairs in Boston, conducted a psychiatric evaluation of plaintiff in July 1997 and reported back to Matsakis in July 1997. Shay diagnosed "Post-traumatic Stress Disorder" with "Major Depressive Episode, Recurrent, Severe Without Psychotic Features 296.33." AR 221.  Shay was of the opinion that plaintiff was "unable to initiate or maintain

even the simplest employment at the present time because of his post traumatic stress symptomatology."  Id.  In a followup letter to plaintiff's counsel, dated September 8, 1997, Shay wrote that it was his professional opinion that plaintiff had been disabled from even the simplest employment since his retirement from the Marine Corps in 1987 and continuously thereafter.  AR 211.

4.  Melissa Chappell-White

Melissa Chappell-White provided a number of statements in support of plaintiff's claim.  On October 23, 1997, she wrote to the Social Security Administration that she had met plaintiff in 1982 and known him well since 1985.  AR 237-40.  She described him as "distant" and said he rarely spoke, although he was polite and considerate.  He was startled frequently by loud noises or sudden movements and appeared to be in a perpetual state of heightened alertness.   He was uncomfortable around people and had difficulty communicating, and when he did so he would sometimes stutter and his head would shake.  Chappell-White described plaintiff as lacking happiness or enthusiasm for just about anything, although he had a very strong work ethic.  AR 239.

At the 2003 hearing, Chappell-White testified that she had known plaintiff since 1985. AR 544.  She described herself as a "long-time friend."  AR 544-45.  She testified that she met plaintiff when she happened to call the moving company he was operating with

10

some others on weekends while he was still in the Marines.  AR 545.  She testified that plaintiff had helped her move two or three times over the years and had performed some home repair work for her.  AR 546.  She said she also saw plaintiff socially on occasion.  Id.

Chappell-White testified that over the period plaintiff performed work for her (which was before 1990), she observed his mental condition deteriorate.  AR 547-55.  She said that plaintiff could not communicate, execute or follow work instructions or show up on a regular basis.  AR 549.  She denied having referred plaintiff to neighbors to perform work but said she knew people in the neighborhood who had hired plaintiff on their own.  AR 551.  These neighbors experienced the same difficulties with plaintiff as she had.  AR 549-50.  Chappell-White testified that she had overheard agitated phone conversations between plaintiff and other customers  who were unhappy with plaintiff's work.  AR 553.

5.  Plaintiff's testimony

Plaintiff testified that after he retired from the Marines in August 1987 until 1990, he had attempted to run a home repair business, doing minor home repairs and renovations, along with a moving business that he closed up in 1987.  AR 536.  Plaintiff did not advertise but obtained jobs by referral from neighbors and past customers.  The work  involved writing estimates, performing the work and supervising others who worked for him.  One of his customers was Chappell-White, for whom he performed three or four small repair jobs, and

11

who "may have" referred him to others.  AR 530-33.  Plaintiff worked three or four days a week some weeks; other weeks, he didn't work at all.  AR 531.  He made just enough money from the business to cover his expenses but not enough to pay himself.  AR 532.

Plaintiff stopped running his home repair business because he couldn't find any more work.  He had problems communicating with most of his customers and keeping to a schedule.  AR 541.

Before December 1992, plaintiff realized that something was wrong with him mentally but he did not know what it was.  He had a "couple" of appointments at the Washington School of Psychiatry but found them of little help.  In 1991, he sought help at a VA Hospital but was told that he was not eligible for treatment there unless he had a service-connected disability.  AR 540.

### D.  Judge Arthur's 2003 Administrative Decision

On November 3, 2003, administrative law judge Arthur rejected plaintiff's claim.  He conceded that plaintiff had post traumatic stress disorder as of the date he was last insured and that it was "severe," meaning that it imposed more than minimal work limitations.  However, he found that the evidence of record was not sufficient to show that the disorder either was severe enough to satisfy the criteria of a listed mental impairment or that it resulted in limitations that precluded plaintiff from performing all substantial gainful activity

12

before the date on which he was last insured.  In reaching this conclusion, Judge Arthur considered the opinions of Dr. Matsakis and Dr. Shay and plaintiff's contention that their retrospective opinions, as corroborated by the contemporaneous observations of Chappell-White, were sufficient to establish that plaintiff was disabled on December 31, 1992.  He disagreed with plaintiff, finding that Chappell-White was not credible because she was "more than a disinterested party who was simply providing an impartial opinion." AR 593.

### E.  Court Proceedings

On appeal to this court, plaintiff argued that the administrative law judge had erred in rejecting Chappell-White's statements and, correspondingly, the retrospective opinions of Drs. Matsakis and Shay.  United States Magistrate Judge Stephen Crocker determined that although Judge Arthur's opinion was flawed, in the end substantial evidence supported his conclusion that plaintiff lacked the evidence necessary to establish that he had been disabled by post traumatic stress disorder on or before December 31, 1992.  Allord v. Barnhart, 04-cv-738-bbc, dkt. #16, Rep. and Rec., June 14, 2005.

The court of appeals disagreed with this court's determination, finding the flaws in Judge Arthur's decision too significant to warrant affirmance. The appellate court determined that the administrative law judge had erred in finding that Chappell-White had not referred plaintiff for a psychiatric examination and that she had recommended plaintiff to other

13

people who needed someone for the kind of work he did.  In addition, the court found that it was illogical for Judge Arthur to have discounted Chappell-White's testimony on the ground that she was plaintiff's friend, reasoning that "a friend would be more likely than a stranger to observe symptoms of mental illness, yet less likely to refer the mentally ill person to a psychologist on frivolous grounds."  Id.  The only way one could say "confidently" that the errors in discrediting Chappell-White's testimony were harmless, said the court, would be if it was "inconceivable for the trier of fact to have made a different finding on credibility," id., such as, for example, if Chappell-White's testimony had been inherently incredible or if the administrative law judge had said that "he would have made the same determination even if the questioned circumstances had been different from what he thought them to be and . . . [gave] an adequate reason for the back-up position."  Id. at 821.  Because neither of these circumstances was present, the court of appeals remanded the case for a new credibility determination.

The appellate court also found that Judge Arthur had "given too much weight to Dr. Hutchinson's 1987 description of Allord's condition."  Id. at 822.  Hutchinson's examination of Allord was farther removed in time from the date on which Allord's coverage ended than Dr. Matsakis's initial examination had been (more than five years versus four months) and Matsakis was an expert in post traumatic stress disorder, whereas Hutchinson was not.  Id.

14

Finally, although acknowledging that the Department of Veterans Affairs' finding that plaintiff was not disabled was not binding on the Social Security Administration, the court held that Judge Arthur should have given the Veteran Administration's determination that plaintiff was disabled "some weight, in light of the evidence . . . that Allord's PTSD was of long standing." Id. at 820.

The court acknowledged that plaintiff's evidence in support of his claim "contain[ed] infirmities," including "discrepancies between Dr. Matsakis's 1993 intake notes when she first examined plaintiff and testimony based on her treatment of him that began in 1996." Id. at 922.  Nonetheless, said the court, the case had to be remanded because "the flaws in the administrative law judge's reasoning are too serious to allow us to uphold the Social Security Administration's decision."  Id.

F.  Post-Remand Proceedings

On remand, Administrative Law Judge John H. Pleuss conducted a new hearing on May 17, 2007, consistent with the order of the court of appeals.  Before the hearing, plaintiff submitted a May 15, 2007 affidavit from Dr. Matsakis, in which she addressed the court of appeals' comment regarding the "discrepancy" between her 1993 intake notes and her later diagnosis and treatment.   AR 803-808.  Responding to the court of appeals' concern that she had initially reported plaintiff's condition as "most likely PTSD," which seemed to

15

contradict her more emphatic diagnosis years later, Dr. Matsakis explained that in 1993, it was the policy of her office to make a diagnosis of post traumatic stress disorder only after a rigorous review of the evidence and she did not have enough time during the initial session to make that diagnosis.  She also explained that her notes from that session recorded only her major observations, partly because of time constraints and partly because extensive note-taking was threatening to many veterans, who were very suspicious of authority.  She recalled, however, that at the initial interview, plaintiff had exhibited signs of depression and low self-esteem, including poor grooming, unclean clothes and a disheveled appearance.  He also exhibited several behaviors consistent with a diagnosis of post traumatic stress disorder, including scanning for danger, reluctance to be at the interview and refusal to reveal his symptoms because of fear that he would be "locked up" by the authorities.

Dr. Matsakis also addressed a number of reasons cited by Judge Arthur in support of his finding of no disability, including plaintiff's efforts to operate two businesses during the late 1980s.  She wrote:

> I have again reviewed the statements of Melissa-Chappell-White regarding Mr. Allord's behavior during this period.  Her observations that Mr. Allord was unable to work productively due in significant part to his inability to communicate with others and that his businesses failed as a result is completely consistent with a diagnosis of totally disabling PTSD.

AR 807.  Dr. Matsakis stated her opinion that plaintiff had developed post traumatic stress disorder while still on active duty in Vietnam.  She wrote:

16

> PTSD is a degenerative disease that, while it doesn't develop overnight, is characterized by a consistent thread of increasingly severe symptoms. The disorder doesn't take a break but continues to increase in severity over time. Given the onset of Mr. Allord's PTSD in [sic] while he was in Vietnam and the severity of Mr. Allord's condition when I first interviewed him in 1993, it would be highly improbable for his condition to have been anything other than totally disabling as of his date last insured of December 31, 1992.

In fact, Dr. Matsakis wrote, plaintiff had a "fully developed and extreme case of PTSD" within months of his release from active duty in 1987. AR 808.

Administrative law judge Pleuss held a hearing on May 17, 2007, at which plaintiff and vocational expert William Dingess testified. Over plaintiff's objection, the administrative law judge then held a supplemental hearing on February 5, 2008, at which he called Allen Hauer, Ph.D., to provide testimony concerning plaintiff's impairments and limitations during his insured period. Hauer testified that he is a licensed psychologist with more than 30 years' experience focused primarily on mental examinations and evaluations in relation to legal proceedings, including criminal proceedings and social security disability. AR 840-41. He treated between 5-10 patients a year whose conditions warranted a diagnosis of PTSD and he had conducted four or five psychological assessments in the previous year of reservists returning from overseas duty. AR 853. Hauer stated that his experience gave him familiarity with the symptoms of post traumatic stress disorder and he had made that diagnosis in a number of cases. AR 846.

17

Hauer testified that from his review of the exhibits in plaintiff's file, including the statements from Chappell-White, he had formed the opinion that during the period from 1987 to 1992, plaintiff was suffering from both a major depressive disorder and a post traumatic stress disorder that primarily affected his ability to interact with and get along with strangers.  AR 843-44.  Hauer pointed out that although plaintiff was "certainly suspicious and avoidant of individuals he did not know or trust," he did have some friends and was described consistently as being polite, having good manners and maintaining socially appropriate behavior.  AR 847-48.  Hauer noted that plaintiff lived independently without financial assistance, was goal-oriented and purposeful in his behavior, was described as being logical and coherent and appeared to be able to pursue his goals when they were important to him.  Id.  In Hauer's opinion, plaintiff's impairments during the relevant time period would have limited him from dealing with the public and adjusting to changes in the work setting but would not have precluded him totally from doing these things.  Id. at 851. He believed that plaintiff could have still worked at gainful activity in a job that had a set of demands and circumstances that were predictable and constrained and that gave him a great deal of control over his work site and work duties.  Id.

The administrative law judge called vocational expert Dingess back to provide vocational expert testimony.  He asked Dingess to assume an individual who could meet the physical demands of medium work requiring no climbing ropes, ladders or scaffolds and no

18

work at temperature extremes, unprotected heights or dangerous machinery; who had a "limited but satisfactory" ability to deal with the public and work stresses; and who was "seriously limited but not precluded" from relating appropriately in social situations and responding appropriately to changes in the work setting. AR 857-58. Dingess testified that such an individual would not be able to perform plaintiff's past relevant work but could perform the unskilled jobs of janitor, hand packer and packager, assembler and industrial inspector.

On April 11, 2008, the administrative law judge found plaintiff not disabled before his insured period ended on December 31, 1992. He agreed that plaintiff had severe post traumatic stress disorder before December 31, 1992 and that his resulting limitations prevented him from communicating and interacting with others "as required by skilled work such as operating a business," AR 763, but he rejected plaintiff's contention, supported by Dr. Matsakis and Dr. Shay, that plaintiff was unable to perform even simple, unskilled work on or before December 1992.

The administrative law judge considered Matsakis's opinion but found it unconvincing, explaining that she had not had an opportunity to test plaintiff during the relevant period and was "generally limited to evaluating later statements by the claimant and Ms. Chappel-White." AR 767. He also noted that when she assessed plaintiff's vocational abilities, Dr. Matsakis focused on his failed business ventures, which she attributed to

19

plaintiff's lack of communication ability.  AR 763.  He also found that, although Matsakis "was obviously concerned about the history of the claimant's condition, with regard to its limitations of functioning [she] was naturally focused more on the current effect of the claimant's condition than its past effect on him."  Id.  He made no reference to Dr. Shay's July 1997 report, except to say that it was consistent with Dr. Matsakis's assessment and supported plaintiff's claim that he had a severe impairment before December 31, 1992.

In conformance with the directive of the court of appeals, the administrative law judge gave "some weight" to the findings of the Veterans' Administration that plaintiff was disabled as of September 16, 1996, finding that it supported plaintiff's contention that he had vocational limitations as a result of severe post traumatic stress disorder before the date on which he was last insured.  He found, however, that the Veterans Administration determination did not establish that plaintiff was disabled for social security purposes by post traumatic stress disorder before December 31, 1992.  AR 761.

With respect to the statements by Chappell-White, the administrative law judge wrote:

> The claimant developed a business and social relationship with Melissa Chappell-White in 1985.  He performed home improvement work for her. Thereafter, they went hiking together, they went to movies and the theater, and they went out to restaurants.  As Judge Arthur correctly noted in pp. 15 and 16 of his decision, Ms. Chappell-White is no disinterested party in this matter.  Her statements support the claimant's contention that he was impaired before his alleged onset date.  I find that her statements establish

20

that the claimant did have some psychological problems and related limitation, but I find that his impairments were not as disabling as she portrays them to be. Ms. Chappell-White, a friend and lay-witness, has no psychological training or experience to evaluate the extent of the claimant's mental impairment. In addition, her statements were not made contemporaneously with the events they relate to; they were made much later.

*   *   *

The statements of his friend Melissa Chappell-White, while based on experience prior to the date last insured, were not made contemporaneously with the events they concern. Those statements were made after the claimant applied for disability benefits. And, Ms. Chappell-White was a friend and business associate of the claimant's.

AR 762, 770.

The administrative law judge accepted Dr. Hauer's testimony that plaintiff's limitations before his date last insured were primarily in the area of social functioning. He rejected plaintiff's objections to Hauer's testimony, explaining that Hauer was an unbiased, well-qualified expert witness in psychology. He also pointed out that Hauer agreed with Drs. Matsakis and Shay that plaintiff had post traumatic stress disorder during the relevant time period. The only area of disagreement between them was whether plaintiff's functional limitations from that disorder were totally disabling. Id. at 767-68.

Judge Pleuss also found that the following sequence of events failed to support plaintiff's claim that he was disabled before the date on which he was last insured:

1) The claimant experienced traumatic events in Vietnam in 1969 and 1970.
2) Thereafter, the claimant successfully worked for 17 years as a military

21

officer.   3) During his post-Vietnam military service, the claimant was promoted to the ranks of Captain (1971) and Major (1979) and completed two undergraduate college degrees.   4) He retired from the military in 1987 after 20 years of military service.   5)  After his military retirement, he was unsuccessful in self-employment.   6)  He was first diagnosed with PTSD in 1993 (23 years after his combat experience and after his 1992 date last insured).  7) He did not seek treatment for his PTSD or file a claim for Social Security disability benefits until 1996.

AR 770.

In addition, Judge Pleuss noted that there was little medical evidence as of the date on which plaintiff was last insured to support his claim that he was disabled at that time. He explained that "Dr. Hutchinson's report does not support the claimant's assertions, and it is the only psychological report made prior to his date last insured.  The examinations and reports of Drs. Shay and Matsakis post-date the claimant's date last insured; though they speak retrospectively, they are insufficient to establish disability as of the date last insured." AR 770.


OPINION

A. Weighing of Medical Opinions

Under the law of the case doctrine, an administrative agency must conform any further proceedings on remand to the principles set forth in the judicial decision, "unless there is a compelling reason to depart."  Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998).

22

"A ruling that evidence was insufficient to support some finding is the type of ruling that establishes the law of the case." <u>Id</u>.  New evidence can compelling grounds to depart from a previous ruling, but only if the new evidence is sufficient to undermine the previous ruling. <u>Id</u>. at 803-04.

Administrative law judge Pleuss undertook a careful and comprehensive review of the evidence produced during the two hearings on remand, at the end of which he concluded that although Dr. Matsakis's various reports failed to support plaintiff's claim that he had been incapable of performing any kind of gainful work before his eligibility for disability insurance coverage expired in 1992, he agreed with her opinion that plaintiff had been suffering from post traumatic stress disorder before 1993.  The administrative law judge listed the many reasons why he rejected her opinion about plaintiff's inability to work, including the lack of any objective evidence to support a finding that plaintiff was disabled as of the date of his retirement from the military, which was the date on which Masatkis thought he was disabled from working,  the evidence that plaintiff had engaged in some work activity after his retirement, Dr. Matsakis's lack of opportunity to evaluate plaintiff before his eligibility date ran and the long time he waited to seek social security benefits.   In reaching his decision, however, Judge Pleuss stated that he was discounting the statements of Chappell-White.  In doing so, he violated the law of the case.

The commissioner suggests, incorrectly, that Judge Pleuss was free to make his own credibility decision about Chappell-White's statements because the court of appeals had stated that "whether [Plaintiff] was entitled to benefits remain[ed] to be determined." Allord, 455 F.3d at 822. The administrative law judge was free to find Chappell-White not credible, but he was not free to do so on grounds that the court of appeals had found not just inadequate but without foundation. In discounting Chappell-White's statements, he characterized them as unreliable because they were not "contemporaneous," in contravention of the court of appeals' holding to the contrary. Id. ("Contemporaneous corroboration was provided in this case by Chappell-White, whose testimony the administrative law judge, as we have just seen, improperly discredited.") The administrative law judge seems to have believed that corroboration is not contemporaneous unless it is documented contemporaneously, not merely observed.

In reversing this court's decision and remanding the case, the court of appeals left open the possibility that at a new hearing, the administrative law judge might find acceptable grounds on which to conclude that Chappell-White was not a credible witness, but it eliminated three grounds: (1) she was a friend of plaintiff's; (2) she had referred him to her friends and neighbors for work opportunities; and (3) she had not referred him to a psychologist. Id. The last two were factually erroneous; the first was based on the misconception that a friend cannot be a credible witness of a claimant's mental illness. After

24

the new hearing, administrative law judge Pleuss discounted Chappell-White's statements on the ground that she was a friend and therefore not a disinterested party and because she was not qualified to evaluate the extent of plaintiff's mental illness. The first of these findings must be rejected for the same reason the court of appeals rejected the identical finding by administrative law judge Arthur; I reject the second because Chappell-White's statements were primarily descriptive of what she observed, rather than diagnoses or evaluations of plaintiff's illness.

An argument could be made (although the commissioner did not) that it is irrelevant whether the administrative law judge made errors with respect to his assessment of Chappell-White's credibility because he relied on Hauer's opinion and Hauer took Chappell-White's statements at face value in arriving at his opinion that plaintiff was disabled by post traumatic stress disorder before December 31, 1992, but not so disabled as to be incapable of performing any type of work. Thus, the argument would go, the administrative law judge's task came down to nothing more than deciding whether to accept Dr. Hauer's opinion or Dr. Matsakis's. Although this outcome seems sensible at first, in the end it is unconvincing.

The administrative law judge found Hauer more persuasive than Matsatkis but he did not articulate his reasons for the finding. He listed a number of reasons why he found Matsatkis's opinions not reliable; he never said why he found Shay's extensive report

25

unreliable, although he noted that Shay had not had an opportunity to examine plaintiff during the period in which he was eligible for benefits.  Moreover, the administrative law judge never explained just why he found Hauer's opinion reliable.  Hauer suffered from the same lack of opportunity to examine plaintiff during the time at issue as Matsakis and Shay did.  In the absence of any explanation why the administrative law judge adopted Hauer's opinion, it is difficult to say with confidence that he would have reached the same conclusion had he not discounted Chappell-White's statements.  Moreover, it is not at all clear why, despite the court of appeals' expressed discomfort over the weight that administrative law judge Arthur gave to Dr. Hutchinson's 1987 evaluation of plaintiff, judge Pleuss gave that opinion so much more weight than he gave to Dr. Matsakis's evaluation only four months after plaintiff's insured date had passed.

In his brief to this court, the commissioner went to great lengths to cite evidence to show that Dr. Matsatkis was biased, but the administrative law judge made no finding to that effect.  Not only do the commissioner's arguments violate the <u>Chenery</u> doctrine that the propriety of an administrative action must be judged by what the agency did and not what it might have done, <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 93 (1943), they leave unexplained the administrative law judge's failure to consider the Shay report.

B. <u>Remedy</u>

Citing <u>Wilder v. Apfel</u>, 153 F.3d 799 (7th Cir. 1998), plaintiff has asked the court to direct an award of benefits because his claim has been pending for 13 years without final resolution.  In <u>Wilder</u>, the court of appeals held that the Social Security Administration's obduracy in finding the claimant not disabled after a second evidentiary hearing justified a remand to the agency with directions that the application for benefits be granted.  <u>Id.</u> at 804.

The evidence of obduracy was far stronger in <u>Wilder</u> than it is here.  At the first hearing in that case, the administrative law judge had rejected the opinion of the agency's own psychiatrist for reasons that struck the court of appeals as close to frivolous ("these facts (not all of which were facts) could not reasonably be thought to outweigh, or even seriously to contradict or qualify [the expert's] disinterested expert testimony.")  <u>Id.</u> at 801.  On remand, a new psychiatrist heard evidence from the claimant's daughters and concluded that the claimant had been disabled before the date on which she was last insured, but he rescinded his opinion on the misunderstanding that he could not rely on the daughters' testimony unless it was documented by medical evidence contemporaneous with the events they were describing.   The court of appeals characterized the second hearing as a wash, because the opinions of the new psychiatrist were "hopelessly inconclusive as well as contaminated by legal confusion," <u>id.</u> at 803, leaving the previous psychiatric testimony

27

supporting the claim.  The only evidence tending to refute the claim was evidence that the court of appeals had ruled insufficient in its remand opinion.

In <u>Wilder</u>, the court doubted that the administrative law judge had even considered the court's opinion when deciding the claim on remand.  No such doubt is present in this case and the question of disability is a closer one than in <u>Wilder</u>.

Despite the agency's continued failure to follow the law of the case, <u>Briscoe ex rel. Taylor v. Barnhart</u>, 425 F.3d 345 (7th Cir. 2005), precludes this court from entering an award of benefits.  In <u>Briscoe</u>, the court held that "[o]bduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability." <u>Id.</u> at 357. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. <u>Id.</u> at 356 (citing <u>Campbell v. Shalala</u>, 988 F.2d 741, 744 (7th Cir. 1993); <u>Micus v. Bowen</u>, 979 F.2d 602, 609 (7th Cir. 1992) (remanding for an award of benefits based on uncontradicted medical opinion supporting claim of disability); <u>Woody v. Secretary of Health and Human Services</u>., 859 F.2d 1156, 1162-63 (3d Cir. 1988) (awarding benefits because "[e]ight years of administrative and judicial proceedings [had] produced record in which the uncontradicted medical and lay evidence" proved disability).  A court does not have the authority to award disability benefits on any ground other than a finding that the claimant is disabled under the

28

Act.  I cannot say that this is a case in which the record supports only one conclusion. <u>Campbell</u>, 988 F.2d at 744.

On remand, the administrative law judge should undertake a proper credible finding of Melissa Chappel-White's statements.  Although I will not prejudge this finding, I note that I have found nothing in the present record to suggest that there are "sufficient other reasons" for finding her statements not credible. <u>Allord</u>, 455 F.3d at 822.  In addition, in deciding which experts are the more believable, the administrative law judge should  bear in mind the court of appeals' comments about contemporaneous evidence and the concerns expressed by the court about the weight given to Hutchinson's evaluation in mid-1987 as compared to the discounting of Matsakis's observations of plaintiff just four months after the insured period ended.  <u>Id.</u>  Finally, the administrative law judge should explain why Dr. Matsakis's explanation of the "infirmities" identified by the court of appeals are inadequate, if he thinks they are.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is VACATED and this matter is remanded to him for further proceedings

consistent with this opinion.

Entered this 25th day of March, 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge